HERMINIA RIVERA, ETC., Plaintiff and Appellee, *v.* LUIS IZ-
QUIERDO SERRANO ET AL., Defendants; ALFREDO IZQUIERDO
NEGRÓN, Defendant and Appellant.

No. 7070. Argued July 22, 1937.—Decided November 18, 1937.

*Rafael Buscaglia* for appellant. *Angel M. Torres* and *Angel de
Jesús Matos,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
Court.

On September 7, 1934, Herminia Rivera, in her own be-
half and as mother with patria potestas over and in repre-
sentation of her minor son José Antonio Rivera, filed a
verified complaint against Luis, José, Julio, Arturo, and
Cruz Izquierdo Serrano, Guillermo Enrique Izquierdo Lu-
que, Agustín and Guillermo Maymí Izquierdo, and Alfredo
Negrón, now Alfredo Izquierdo Negrón, praying for a judg-
ment declaring the minor to be the acknowledged natural son
of Eladio Izquierdo Serrano, and for any other proper relief.

On the following October 5, the defendant Alfredo Ne-
grón, now Alfredo Izquierdo, through his attorney, alleged
that the complaint did not state facts sufficient to constitute
a cause of action against him and that there was misjoinder
of parties defendant, for it was evident from the complaint
itself that the first eight defendants were not necessary
parties inasmuch as the demurrant was the only person whom

the action could be brought, since he had been declared the acknowledged natural son of Eladio Izquierdo Serrano by the judgment of June 29, 1932, the other eight defendants being only collateral relatives. He also filed a motion to strike out certain averments of the complaint.

By the order of November 7, 1934, the district court denied the motion to strike out on the ground that the averments sought to be stricken out did not constitute irrelevant or redundant matter to the action, nor were the same conclusions of fact or of law, and overruled the demurrer on the ground that the complaint stated the material facts pertaining to an action of the character of the one exercised, and even though it was alleged that the judgment of June 29, 1934 had been rendered, it was not set forth that it had become final.

The defendant Negrón, now Izquierdo, answered denying the averments of the complaint and alleging as new matter that the action was the result of a combination between the plaintiff and the other eight defendants for the purpose of hindering and delaying the claim for hereditary share brought by him in the same court against the said other eight defendants.

The plaintiff then filed a motion to make the new matter alleged in the answer more specific. Such motion was granted and, the defendant having failed to comply with the order of the court in that respect, the entry of the default was requested and obtained as regards such failure.

The trial, which had been set for March 21, 1935, was held, the plaintiff and the defendant Alfredo Izquierdo Negrón appearing through their attorneys. The other defendant did not appear. The plaintiff introduced her evidence, consisting of documents and the testimony of witnesses. At the close thereof, the defendant said:

"Your Honor, we move for nonsuit. If you examine the complaint, you will see that two grounds of acknowledgment are set forth therein, to wit: concubinage, and the acknowledgment of the

child by the father as manifested subsequently to the birth by the natural acts of a father towards his child. As regards the evidence of the concubinage there is none; as regards the acknowledgment, there is no evidence whatever, either.''

The court overruled the motion for nonsuit and ''the defendant stated that he would not introduce any evidence,'' the case being thus ended and submitted to the court, which decided the same by the judgment of April 18, 1935, decreeing the acknowledgment prayed for.

The defendant appealed, and in his brief he charges the trial court with the commission of five errors.

The first one is a naked assignment. He does not discuss it in his brief. We shall not do so, either.

■ The second relates to the demurrer, and it is only argued with respect to the misjoinder of parties. It is true that if the defendant Alfredo Izquierdo Negrón had been declared the acknowledged natural son of Dr. Eladio María Izquierdo by the judgment of June 29, 1932, he was his only heir, since the other persons—the other eight defendants— were collateral relatives who had been previously declared heirs as such; but it is also true that as the judgment of June 29, 1932, is not alleged to have become final (*firme*) the other eight defendants might have rights to defend in the inheritance of the doctor. And let it not be said that if this were admitted to be so, there would be no cause of action against the acknowledged natural son, because, even though the above cited judgment of June 29, 1932, had not become final, it having been appealed, the truth is that the same would be presumed to be just until a reversal thereof were obtained. Although the situation is anomalous, the procedure adopted by the plaintiff and approved by the district court seems logical, so as not to delay the exercise of the action and to obtain a judgment that would be valid against everybody, but even though it were to be admitted that the same was not strictly authorized by law, the error that might have been committed would be harmless. As a

matter of fact, the action was continued only against the interested party as far as the inheritance of Dr. Izquierdo is concerned.

The third assignment, whereby the district court is claimed to have erred in having ordered that the allegation of a combination be made more specific, is in our opinion, without merit, in view of the attendant circumstances.

■ By the fourth assignment it is maintained that:

"The court committed error in admitting, over the objection of the defendant-appellant, who took the proper exceptions, evidence tending to establish the paternity, that is, the blood relations that might exist between the plaintiff and Dr. Eladio Izquierdo Serrano."

If a study is made of the cases wherein the courts of justice have been resorted to, so that they declare that a certain person has the status of an acknowledged natural child of another, and which have been appealed to this Court, it will be seen that it has always been alleged as the basic ground of the action that the child was born as a result of the sexual relations of the father with a certain woman, and was acknowledged as such by the father in accordance with the statute. And as a consequence thereof, the evidence offered to prove such allegation has been admitted. It will suffice to refer to the very same case of the defendant Alfredo Negrón when he filed his complaint against the heirs of Dr. Izquierdo praying for a judgment whereby it be declared, as it was, that he was the acknowledged natural son of said doctor. 46 P.R.R. 638.

Furthermore, the question was dilucidated and settled by this Court in Colón v. Heirs of Tristani, 44 P.R.R. 163, 170 et seq., wherein this Court, speaking through Mr. Justice Córdova Dávila, expressed itself as follows:

"Section 189 of our Code, as enacted in 1902, provides:

" 'A father is obliged to recognize his illegitimate child in the following cases:

" '1.—Where there be an authentic statement in writing made by him expressly recognizing his paternity.

" '2.—When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance.

" '3.—When the mother was known to have lived in concubinage with the father during the pregnancy or birth of the child, or when the child was born while his parents were engaged to be married (*relaciones amorosas.*) '

"The third paragraph of the above quoted section introduces an innovation of a fundamental character, inasmuch as it allows the investigation of paternity. This paragraph establishes the presumption of paternity when the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child. This is in fact a presumption similar to that established in the contract of marriage, with the difference that in the latter the agreement of the parties sanctioned by the solemnity of the marriage establishes the presumption, while in the concubinage the relation existing between the parents is established by means of evidence. That is to say, in order that the court may reach the conclusion that there is a concubinage it is necessary to show that a man and a woman had sexual intercourse and that they have complied with the other provisions specified by law. In this case the child can not be declared to be a natural son without investigating the acts that have taken place between the parents, the relations existing between one and the other. In cases of uninterrupted condition as of a natural child, the direct acts of the father and child are to be considered in order to determine the filiation. Besides, as a question of fact, investigation of paternity has been constantly allowed in Puerto Rico. The mother has always testified extensively about her sexual relations with the putative father in an action for the acknowledgment of a natural son. Section 38 of the Law of Evidence provides that all persons without exception, otherwise than is specified in sections 39 and 40, who, having organs of sense, can perceive, and perceiving, can make known their perceptions to others, may be witnesses. Section 40 provides the cases in which a person may not be examined as a witness and these exceptions do not comprise the testimony of a mother regarding sexual intercourse with the alleged father of her son.

"Said section 189 of the Civil Code, as amended, in 1911, still cotnains the provision that establishes the presumption of natural son when the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child. Our laws do not prohibit the investigation of paternity

and once this obstacle has disappeared, we are of the opinion that the means of evidence in Puerto Rico are at present much wider than those existing under the Spanish Civil Code. Our present law is more humane and liberal in striking out the obstacle which the commentator Scaevola designates as a juridical barbarism. . . .''

■ By the fifth and last assignment, the question of the sufficiency of the evidence is raised.

In setting forth, analizing, and weighing the same in the light of the applicable law and decisions, the trial court, in its statement of the case and opinion, said:·

"The plaintiff introduced documentary and oral evidence, the former consisting of the birth certificate of José Antonio Rivera, and the latter of the testimony of Herminia Rivera, Buenaventura Ortiz, Ana Mura, Ignacio Borges, José Enrique Gierbolini, Onécimo Bermúdez, and Eustaquio A. Rodríguez. It appears therefrom that about the year 1920, while Herminia Rivera lived in the rural zone of Coamo, she became ill and her relatives took her to the municipal hospital of Coamo for medical assistance; that in said hospital Dr Eladio Izquierdo Serrano, who by that time was municipal physician (médico titular), took charge of the patient; that Mrs. Rivera re· ceived treatment for a month under the immediate medical assistance of the aforesaid Dr. Izquierdo; that after she recovered from her ailments, in July or August of 1920, Dr. Izquierdo took her to live with him as his mistress, she being then a single woman and a virgin, to a house located on Baldorioty Street in Coamo, which he leased for that purpose from Buenaventura Ortiz, to whom he paid directly the rent; that Izquierdo kept visiting the house frequently, especially at night, until February, 1921; that at the request of Dr. Izquierdo, who paid him therefor, Onécimo Bermúdez, a merchant, furunished Mrs. Rivera one liter of milk daily; that as a result of such relations, Herminia Rivera became pregnant; that about the month of February, 1921, Dr. Izquierdo went to practice as a physician in Guayanilla, where he stayed for a short time, and then moved to Patillas; that before leaving, Dr. Izquierdo asked Ana Mura, a midwife and nurse, to attend Herminia Rivera in her confinement, and authorized her to utilize the services of a physician if necessary; that as the state of pregnacy of Mrs. Rivera was advanced, she decided to go to the country with her parents to deliver the child, and she did so; that on July 30, 1931, attended by Ana Mura, who went there upon receiving notice, she gave birth to a boy who was

named José Antonio; that Dr. Izquierdo, through different channels, sent money to Herminia Rivera and her son; that eight or fifteen days after the child was born, he came to see him, examined the parturient to find out about the state of her health, and rewarded the midwife with five dollars besides paying her two dollars for the supplies used in the childbirth; that on different occasions the doctor came again to visit the child, which he cherished and treated as his own; that Dr. Izquierdo continued to pay Ortiz the rent of the house formerly occupied by Herminia in the town, in case she should reoccupy the same as her residence; that sometime afterwards, Ortiz saw Dr. Izquierdo in Morovis and the latter inquired about Herminia and the child, and sent them money with him, the witness further testifying that he also saw him in Coamo treating the child as his own son and caressing him; that the doctor wrote to Herminia somewhat frequently and that the latter, having married her present husband on August 10, 1926, destroyed the letters because she thought that he (her husband) might not like her keeping them; that the child has always lived under her warm affection and care, and also, since 1926, under her aforementioned husband's; that the doctor always continued caring for his son; that in 1927, Eustaquio A. Rodríguez, from Coamo, a very close friend of Dr. Izquierdo, visited him in Cataño, and after obtaining from him an affidavit for the purposes of a certain veteran's claim, the doctor asked him about the child and Herminia, and sent them money with him; that on March 19, 1931, José Enrique Giorbolini, from Coamo, saw the doctor in Corozal and the latter inquired whether he knew the woman with whom he had had a child. Giorbolini answered in the negative and the doctor then asked him to look for her, see her personally, and deliver to her some money which he handed to the witness, a request which Gierbolini fulfilled. He learned of Dr. Izquierdo's death through the newspapers.

. . . . . . . . . . .

"That is, in brief, together with some other details which make the picture more vivid, the evidence introduced by the plantiff. The same was not thwarted in any way. Because of the careful observation to which we submitted the witnesses while they were giving their testimony, there is nothing to worry us about ther veracity. They were entitled to full credit.

"Subdivision 2 of section 125 of our Civil Code provides that where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father, justified by acts of the same father, the latter is obliged to recognize the natural child. As José

Antonio was born on July 20, 1921, he is covered by the cited statute. Once the possession of such status is established by the direct and uninterrupted acts of the father, it seems to us that neither the latter nor the members of his succession can deprive the child of the status of filiation thus acquired. Escriche says that 'acknowledgment is not properly a liberality but the statement of a fact upon which the law confers certain advantages; but once such statement of paternity is made, the child acquires the status of filiation of which it can not be deprived thereafter'. Or, as said in *Colón* v. *Heirs of Tristani,* 44 P.R.R. 163, 173:

" 'Paternity and filiation arise from the conception of the child and his birth. The law requires certain conditions in order that the natural act of conception and birth of the child may be had and considered as a right. ˉWhen these conditions have occurred, filiation is established, but in order that it may acquire legal life the formality of the acknowledgment is necessary. The natural condition of the child is always a fact; the acknowledgment is the con-sécration of that fact, the solemnity proclaiming that the provisions of law have been complied with, and places the child in a position to bring suit to ratify the rights corresponding to him as such.' "

And it ended by adjudging as follows:

"The complaint must be sustained without special imposition of costs. The clerk will enter judgment accordingly".

We have nothing to add. The evidence was well summarized and weighed, and the law and the decisions correctly construed and applied. We have given careful attention to the arguments contained in the appellant's brief in support of the assignment of error, but we have not been convinced to the contrary. The judgment appealed from must be affirmed.

Mr. Justice Wolf dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.